IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MARK GEKAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 10-3066 |
| | ) |
| PETER VASILIADES, MARY RANIELI, JOHN LAGATUTTA, JOHN KRISKO, and FRANK MAGGIO, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

OPINION

RICHARD MILLS, U.S. District Judge:

This is an action pursuant to 42 U.S.C. § 1983, wherein the Plaintiff alleges the Defendants retaliated against him because of his free speech activity in violation of the First Amendment. Pending before the Court is the Defendants' Motion for Summary Judgment.

I. FACTUAL BACKGROUND[1]

The Plaintiff, Mark Gekas, is a practicing dentist in the Springfield

---

[1] Almost all of the material facts alleged by the Defendants in support of their motion are undisputed.

area. In 1988, the Plaintiff's dental practice was visited by an investigator from the Illinois Department of Professional Regulation ("the Department"). The Plaintiff met with Dr. Michael Vold, who at the time was the Dental Coordinator for the Department. Vold requested information regarding the Plaintiff's administration of nitrous oxide to a child and demanded that Plaintiff send information regarding all prescriptions the Plaintiff wrote on a continuing basis.

The Plaintiff contacted then-Deputy Governor Jim Riley for assistance challenging Vold's demand. Deputy Governor Riley assisted the Plaintiff in scheduling an informal hearing with the Department. After the informal hearing, the Plaintiff was subject to less onerous requirements than Vold's original demand. For the succeeding thirteen years, no action was taken against the Plaintiff by the Department.

In or around 2001, the Plaintiff's offices were raided by the federal Drug Enforcement Agency and the Department, through investigator Peter Vasiliades, one of the Defendants. The Plaintiff claims that the raid was organized by Vold to "get even" with the Plaintiff before Vold was removed

from the Department but he has no evidence of this allegation.

Following the 2001 raid, the Plaintiff attended two informal meetings regarding the number of pills he had dispensed. Defendant Frank Maggio, who sat on the Dental Board, attended the Plaintiff's first informal meeting and aggressively questioned the Plaintiff's attorney. The Plaintiff's first informal hearing resulted in an offer to settle charges for a six-month suspension along with continuing education requirements. Immediately after his first informal hearing, the Plaintiff believed that Vold was in the building and ostensibly involved in the proceeding, despite the fact that Vold had been relieved of his Dental Coordinator position eight months prior.

The Plaintiff's second informal hearing resulted in a decision that was consistent with the first meeting. However, the Plaintiff refused to sign off on any settlement.

A complaint was filed by the Department after no settlement agreement could be reached with regards to the informal hearings. Vold was replaced by Defendant Mary Ranieli as the Department Dental

Coordinator on July 11, 2003. Ranieli testified that she and Vold had a contentious relationship after she took over that position. Ranieli further testified that she has never spoken to Vold about the Plaintiff.

On May 19, 2004, the Medical Prosecutions unit within the Department issued a Rule to Show Cause, in Department Case No. 200307927, why a cease and desist order should not issue against the Plaintiff for the unlicensed practice of medicine, based on an allegation that he was treating a patient for a medical, rather than dental, condition. The Plaintiff answered the Rule to Show Cause on May 26, 2004.

On June 10, 2004, an order to cease and desist the unlicensed practice of medicine was issued against the Plaintiff, citing his treatment of patient K.Y. The Plaintiff claims that his attorney consulted Department counsel and advised the Plaintiff to cease treating patient K.Y. On July 13, 2004, the Plaintiff filed an administrative review complaint regarding the order to cease and desist.

On October 31, 2008, Department Director Daniel Bluthardt, formerly a Defendant in this case, issued an order to vacate the cease and

desist order. On December 8, 2008, the Plaintiff and the Department entered an agreed order to dismiss the administrative review case.

In 2004, the Plaintiff's attorney informed him that a continuing education course that Plaintiff had attended had been disapproved by the Department. The Plaintiff claims that he contacted Defendant Ranieli about the disapproved course and she advised she would look into the issue but eventually stated she was instructed not to speak with the Plaintiff by Department counsel. Moreover, as Dental Coordinator, she regularly did not speak with dentists subject to investigation until investigatory conferences.

In 2005, the President of the Illinois Dental Society wrote a letter to the Department on the Plaintiff's behalf. Beginning in 2007, the Plaintiff enlisted the assistance of State Senator Larry Bomke in dealing with the Department. Senator Bomke arranged a meeting between the Plaintiff and Defendant John Lagatutta, then-Deputy Director of the Department. Defendant Lagatutta canceled the meeting due to poor weather conditions and the meeting was never rescheduled.

In 2009, the Plaintiff filed a FOIA request with the Department, which was denied, and the Plaintiff filed suit over the denial. On April 2, 2010, the litigation regarding the FOIA request was settled and dismissed by stipulation.

During the pendency of the Plaintiff's litigation with the Department, discipline against the Plaintiff was listed on the Department's website. The Plaintiff claims that, despite the fact Vold had been removed from his position at the Department years prior, Vold still had access to the Department building and Defendant Vasiliades works at his direction. However, the Plaintiff has no evidence of this assertion.

The Defendants allege that upon repeated questioning by counsel, the Plaintiff was unable to provide a factual basis for his assertion that Defendants were acting with a retaliatory motive or at the direction of Vold, other than the alleged retaliatory actions themselves. The Plaintiff asserts this is not necessarily an accurate summary of his testimony. The Plaintiff testified that the incidents he has alleged were undertaken with no basis. He appears to testify that the Defendants acted at the direction of

Vold. When asked about what type of evidence he has that Defendant Vasiliades had a retaliatory motive, the Plaintiff stated, "He did it against me with no documents, no evidence, no probable cause." Subsequently, the Plaintiff's counsel tried to clarify the Plaintiff's answer regarding the evidence he has that Defendant Vasiliades acted against him for retaliatory purposes, as follows:

> Mr. Baker: Mark, Mark, Mark. He's not asking you what Pete has done right now. What he is asking you is what you have alleged in your complaint that he did, why is that you believe it was because of your protected speech? That's what he's asking you.
>
> A. Because he did it. He was the one to do it. It was his position to do that.

The Plaintiff went on to say that Defendant Vasiliades is working on behalf of Vold.

In 2009, Defendant John Krisko signed two subpoenas directed toward the Plaintiff. Krisko testified he had never spoken to Vold about the Plaintiff. Defendant Vasiliades testified in connection with another case that he had not discussed issues surrounding subpoenas served on the Plaintiff with Vold.

7

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the Plaintiff. See Siliven v. Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." See Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. See Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. See id.

### B. First Amendment retaliation

A plaintiff asserting a claim under § 1983 for retaliation under the

First Amendment must first show that his speech was constitutionally protected. See Graber v. Clarke, 763 F.3d 888, 894 (7th Cir. 2014). Next, he must show that the actions alleged to constitute retaliation were related to the exercise of his protected speech. See id. The plaintiff must then show that a reasonable jury could find that his speech was a "substantial" or "motivating" factor for the adverse actions. See id.

For purposes of this motion, the Court will assume that Plaintiff engaged in protected activity and suffered a constitutional deprivation. The Defendants contend that summary judgment must be granted for a number of reasons. They claim he has not presented sufficient evidence to meet his prima facie burden as to retaliation under § 1983. The Defendants also assert that most, if not all, of the Plaintiff's claims are barred by the applicable statute of limitations. The Defendants further contend that summary judgment is warranted because they are entitled to qualified immunity.

First, the Defendants allege that Plaintiff is unable to meet his prima facie burden under § 1983. They assert the record contains no evidence of

a retaliatory motive on the part of any of the Defendants. Speculation concerning a defendant's motive cannot defeat a properly supported motion. See Devbrow v. Gallegos, 735 F.3d 584, 588 (7th Cir. 2013).

The Defendants allege that Frank Maggio's only contact with the Plaintiff involved participating in the Plaintiff's first informal hearing related to the raid on his office. Except for his own speculation, the Plaintiff presents no facts suggesting that Maggio had a retaliatory motive towards the Plaintiff or was aware of the Plaintiff's contact with the Deputy Governor thirteen years earlier.

Defendant John Lagatutta's contact with the Plaintiff was limited to a scheduled meeting that was set up by Senator Bomke. Lagatutta canceled the meeting due to bad weather and the meeting was never rescheduled. The Plaintiff appears to speculate that the meeting was not rescheduled because of Lagatutta's retaliatory motive.

Defendant John Krisko signed off on two subpoenas in 2009. In ruling on a motion for judgment on the pleadings on February 20, 2013, the Court excluded from this case any issues surrounding the propriety of

those subpoenas. Krisko further testified that he has never spoken to Vold about the Plaintiff. There do not appear to be any other acts or omissions alleged to be retaliatory or any other assertions that Krisko harbored a retaliatory motive.

Defendant Mary Ranieli, as the Department Dental Coordinator, did have some limited contact with the Plaintiff. Because the Plaintiff had investigations that were pending with the Department, however, Ranieli as a matter of general practice ceased having any contact with the Plaintiff. Additionally, Ranieli testified that she never spoke to Vold about the Plaintiff. Ranieli also testified that she had a contentious relationship with Vold after she replaced him as Dental Coordinator. The Plaintiff offers only his conjecture in contesting these assertions.

Along with agents of the Drug Enforcement Agency, Defendant Vasiliades participated in the raid on the Plaintiff's offices. The Plaintiff testified that the raid was designed by Vold to retaliate against the Plaintiff for the 1988 contact with the Deputy Governor. The Defendants claim the Plaintiff's theory appears to be that because of the Deputy Governor's

11

involvement, the Plaintiff received less onerous discipline and remedial requirements than Vold wanted. The implication is that, although he held a grudge over the Deputy Governor's involvement in 1988, Vold waited for thirteen years to direct Defendant Vasiliades to raid the Plaintiff's office. Vasiliades testified that he did not consult with Vold after Vold was replaced in the Department. The Plaintiff simply believes, without having any evidence, that Vasiliades works at Vold's direction. Accordingly, the Plaintiff speculates that Vasiliades had a retaliatory motive.

The other alleged retaliatory acts that are not attributed to a particular Defendant suffer from the same defects. The Plaintiff simply alleges without any support that these actions were in retaliation for his speech activity.

In his response, the Plaintiff alleges generally that courts must exercise caution in granting summary judgment in civil rights cases because questions of intent and motivation are necessarily fact-driven questions. However, the Court must follow the standards of Rule 56 and the applicable case law. A plaintiff must have more than his own speculation

12

to defeat a properly supported summary judgment motion.

More specifically, the Plaintiff contends that Defendants have never explained why they took the actions of which he complains. The Plaintiff testified the Defendants had no basis to take these measures. The Defendants have never offered any justification for their actions.

As the Defendants allege, however, they do not have to prove anything at this stage. The Plaintiff must present a prima facie case of retaliation before the burden of production shifts to the Defendant. Because the Plaintiff relies only on his own speculation or conjecture, there are no legitimate factual disputes in the record. Accordingly, the Court concludes that there is no genuine issue of material fact and no reasonable jury could conclude that Defendants acted with retaliatory intent.

Ergo, the Defendants' Motion for Summary Judgment [d/e 78] is ALLOWED.

Any future Court settings are Canceled.

The Clerk will enter Judgment in favor of the Defendants and against the Plaintiff.

CASE CLOSED.

ENTER: January 8, 2015

FOR THE COURT:

                                                                          s/Richard Mills
                                                                          Richard Mills
                                                                          United States District Judge